**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

ROGELIO RODRIGUEZ, GLEN ADAMS, )
JAMES ALLEN, JR., ROBERT )
ALTESLABEN, FLAVIA ALVAREZ, )
SCOTT ANDERSON, JESSICA BAILES, ) **CASE NO.**
NISSIM BAROKAS, EUGENE BARRIOS, )
JR., TIMOTHY BERGMAN, DAVID )
BINDER, WILLIAM BRYANT, JR., KAREN ) **COMPLAINT**
BUCUR, SWANN CHRISTOPHER, )
REGINALD COONCE, JR., OLGA )
CORDOVA, SAMUEL COROLLA, SR., ) **JURY TRIAL DEMANDED**
DAVID CUAREZMA, JAY DAVIS, DOAK )
DECKER, LEONARD DINKIN, JASON )
DONNER, EDWARD DUFOUR, JR., )
RODERICK EDDINGTON, VICTOR )
FERNANDEZ APONTE, MICHAEL )
FLANAGAN, RONALD FLAUM, )
ROSENDO GARCIA, JOYCE GARGAR, )
RANIERO GIMENO, CID GOMES, JAMES )
GRIFFIN, FRANCES HAMILTON, JOHNNY )
HARDWAY, HAROLD HILLIARD, JR., )
KATHERINE HUNTER, VIVIAN JENKINS, )
BRUCE KINSEY, FELIX KIZHNER, )
DOUGLAS KUBE, MICHAEL LAGRONE, )
WALTER LEBLANC, ROBERT LEEN, )
CECIL MANN, JR., FRANCES MARSH, )
GENA MASON, ALAN MAZZOLA, )
CLAYTON MELSON, III, CHRISTINE )
MILLER, APRIL MOBLEY, YOUSEF )
MOURAD, MELISSA MYERS, WILLIAM )
NOCKENGOST, MICHAEL OKASH, )
GEORGE ORLANDO, VLADIMIR PEREZ, )
RHEA PETERS, JAMES PETRINO, EDDIE )
POKE, JR., JACK RAND, JOHN RILEY, )
ROBERT RINGIER, BENJAMIN RIVERA )
CRUZ, JOHN RODRIGUEZ, CINDY RUST, )
JOSEPH SALAZAR, WILLIAM SCHMITT, )
KENNETH SCHOULER, RYAN SHULTZ, )
BRUCE SCHWARTZ, JORGE SERRANO, )
MARSHA SHANOR, RYAN SIMS, STEVEN )
STIEFEL, RICHARD STOER, KYLE )
TITLEBAUM, JOHN TUTTLE, III, JOSE )
VEGA, JENNIFER WALAITIS JOHNSON, )
ALAN WILLEY, JR., RICHARD WINTERS, )

DAVID WOLFE, BRETT AUDETTE, )
SANDRA FOYTIK, WILFORD WACKLER, )
SR., AND KATHLEEN FERRY, )
                                 )
       **Plaintiffs,** )
                                   )
vs. )
                                   )
3M COMPANY (f/k/a Minnesota Mining and )
Manufacturing, Co.); AGC CHEMICAL )
AMERICAS, INC.; AGC, INC. (f/k/a Asahi )
Glass Co., Ltd.);  ARCHROMA U.S., INC.; )
ARKEMA, INC.; BASF CORPORATION; )
BUCKEYE FIRE EQUIPMENT CO.; )
CHEMDESIGN PRODUCTS, INC.; )
CHEMGUARD, INC.; CHEMICALS )
INCORPORATED; CLARIANT )
CORPORATION; CORTEVA, INC.; )
DEEPWATER CHEMICALS, INC.; )
DUPONT DE NEMOURS, INC.; DYNAX )
CORPORATION; E.I. DU PONT DE )
NEMOURS AND COMPANY; NATION )
FORD CHEMICAL COMPANY; THE )
CHEMOURS COMPANY; THE )
CHEMOURS COMPANY FC, LLC; TYCO )
FIRE PRODUCTS, LP; AND JOHN DOE )
DEFENDANTS 1-49, )
                                   )
       **Defendants.** )
                                   )

## <u>COMPLAINT</u>

Plaintiffs Rogelio Rodriguez, Glen Adams, James Allen, Jr., Robert Alteslaben, Flavia

Alvarez, Scott Anderson, Jessica Bailes, Nissim Barokas, Eugene Barrios, Jr., Timothy Bergman,

David Binder, William Bryant, Jr., Karen Bucur, Swann Christopher, Reginald Coonce, Jr., Olga

Cordova, Samuel Corolla, Sr., David Cuarezma, Jay Davis, Doak Decker, Leonard Dinkin, Jason

Donner, Edward Dufour, Jr., Roderick Eddington, Victor Fernandez Aponte, Michael Flanagan,

Ronald Flaum, Rosendo Garcia, Joyce Gargar, Raniero Gimeno, Cid Gomes, James Griffin, Frances

Hamilton, Johnny Hardway, Harold Hilliard, Jr., Katherine Hunter, Vivian Jenkins, Bruce Kinsey,

Felix Kizhner, Douglas Kube, Michael Lagrone, Walter Leblanc, Robert Leen, Cecil Mann, Jr., Frances Marsh, Gena Mason, Alan Mazzola, Clayton Melson, III, Christine Miller, April Mobley, Yousef Mourad, Melissa Myers, William Nockengost, Michael Okash, George Orlando, Vladimir Perez, Rhea Peters, James Petrino, Eddie Poke, Jr., Jack Rand, John Riley, Robert Ringier, Benjamin Rivera Cruz, John Rodriguez, Cindy Rust, Joseph Salazar, William Schmitt, Kenneth Schouler, Ryan Shultz, Bruce Schwartz, Jorge Serrano, Marsha Shanor, Ryan Sims, Steven Stiefel, Richard Stoer, Kyle Titlebaum, John Tuttle, III, Jose Vega, Jennifer Walaitis Johnson, Alan Willey, Jr., Richard Winters, David Wolfe, Brett Audette, Sandra Foytik, Wilford Wackler, Sr., and Kathleen Ferry, by and through undersigned counsel, bring this action against Defendants 3M Company (f/k/a Minnesota Mining and Manufacturing, Co.), AGC Chemical Americas, Inc., AGC, Inc. (f/k/a Asahi Glass Co., Ltd.), Archroma U.S., Inc., Arkema Inc., BASF Corporation, Buckeye Fire Equipment Company, Chemdesign Products, Inc., Chemguard, Inc., Chemicals Incorporated, Clariant Corporation, Corteva, Inc., Deepwater Chemicals, Inc., DuPont De Nemours, Inc., Dynax Corporation, E. I. Du Pont de Nemours and Company, Nation Ford Chemical Company, The Chemours Company, The Chemours Company FC, LLC, and Tyco Fire Products, LP (individually and as successor-in-interest to The Ansul Company).  Plaintiffs hereby allege, upon information and belief, as follows:

## I.    SUMMARY OF THE CASE

1.    Plaintiffs bring this action against Defendants who manufactured aqueous film-forming foam ("AFFF"), exposure to which resulted in Plaintiffs' serious personal injuries.  The AFFF manufactured by Defendants contained per- and polyfluoroalkyl substances ("PFAS") including, but not limited to, perfluorooctanoic acid ("PFOA") and/or perfluorooctane sulfonic acid ("PFOS").

2.      PFOS and PFOA are fluorosurfactants that repel oil, grease, and water. PFOS, PFOA, and/or their chemical precursors, are or were components of AFFF products, which are firefighting suppressant agents used in training and firefighting activities for fighting Class B fires. Class B fires include fires involving hydrocarbon fuels such as petroleum or other flammable liquids.

3.      PFOS and PFOA are mobile, persist indefinitely in the environment, bioaccumulate in individual organisms and humans, and biomagnify up the food chain.  PFOS and PFOA are also associated with multiple and significant adverse health effects in humans, including but not limited to kidney cancer, testicular cancer, high cholesterol, thyroid disease, ulcerative colitis, and pregnancy-induced hypertension.

4.      At various times from the 1960s through today, Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOS, PFOA, and/or their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or perfluourinated chemicals contained in AFFF.

5.      This Complaint refers to AFFF, PFOA, PFOS, PFAS compounds, and fluorosurfactants collectively as "Fluorosurfactant Products."

6.      Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the knowledge that firefighters would be exposed to these toxic compounds during fire protection, training, and response activities even when the AFFF was used as directed and intended by the manufacturer.

7.      Defendants manufactured, marketed and/or sold Fluorosurfactant Products with the knowledge that PFAS are toxic, persist indefinitely, and would be routinely released into the environment, including the drinking water supply, even when the AFFF was used as directed and intended by Defendants.

8.      Due to the widespread PFAS contamination caused by Defendants' Fluorosurfectant Products, including the contamination of Plaintiffs' drinking water supplies, Plaintiffs have suffered serious personal injuries set forth in detail below. Plaintiffs' injuries are a direct result of their exposure to the PFAS contamination present in their drinking water supplies.

9.      Plaintiffs, as residents and those who visited, worked, or resided in the contaminated areas, have been unknowingly exposed for many years to dangerous PFAS levels.

10.     Plaintiffs' unwitting exposure to PFAS in their water supply as a result of Defendants' conduct set forth below is the direct and proximate cause of Plaintiffs' injuries.

11.     Plaintiffs file this lawsuit to recover compensatory and all other damages, including but not limited to past and future (1) expenses for care, treatment and hospitalization incident to their injuries;  (2) compensation for physical pain and suffering;  (3) loss of income, wages, or earning capacity; (4) compensation for mental or emotional pain and anguish; (5) physical impairment; (6) loss of companionship and society;  (7) inconvenience; (8) loss of enjoyment of life; and (9) exemplary damages.

## II.     PARTIES

### A. <u>Plaintiffs</u>

12.     Plaintiff Rogelio Rodriguez is a citizen and resident of Miami, Florida in Miami-Dade County. From approximately 1968 to 1999, Plaintiff Rogelio Rodriguez was regularly exposed to PFAS through drinking water at residences in Miami, Florida; Louisville, Colorado; and The Hammocks, Florida.

13.     On or about 2023, Plaintiff Rogelio Rodriguez was diagnosed with kidney cancer in Miami, Florida and subsequently underwent an ablation.

14.     Plaintiff Glen Adams is a citizen and resident of Indian Harbour Beach, Florida. From approximately 1995 to 2005, Plaintiff Glen Adams was regularly exposed to PFAS through drinking

water at residences in Port Royal, South Carolina; Camp Lejeune, North Carolina; Millington, Tennessee; Pensacola, Florida; and Mims, Florida.

15.     On or about 2000, Plaintiff Glen Adams was diagnosed with thyroid disease in Melbourne, Florida. On or about April 2024, Plaintiff Glen Adams was diagnosed with kidney cancer in Melbourne, Florida and subsequently underwent a partial nephrectomy.

16.     Plaintiff James Allen, Jr. is a citizen and resident of Kenansville, Florida. From approximately 1972 to 2001, Plaintiff James Allen, Jr. was regularly exposed to PFAS through drinking water at residences and workplaces in Ashland, Kentucky; Argillite, Kentucky; and Greenup, Kentucky.

17.     On or about March 2024, Plaintiff James Allen, Jr. was diagnosed with kidney cancer in St. Cloud, Florida and subsequently underwent a right nephrectomy.

18.     Plaintiff Robert Alteslaben is a citizen and resident of Jensen Beach, Florida. From approximately 1981 to 2025, Plaintiff Robert Alteslaben was regularly exposed to PFAS through drinking water at residences and workplaces in Monmouth Beach, New Jersey and Stuart, Florida.

19.     On or about 2010, Plaintiff Robert Alteslaben was diagnosed with testicular cancer in Stuart, Florida and subsequently underwent a right orchiectomy, chemotherapy, a pancreaticoduodenectomy, a liver resection, and retroperitoneal lymph node dissections. During chemotherapy treatments, he suffered from multiple infections leading to an approximately forty-day hospitalization.

20.     Plaintiff Flavia Alvarez is a citizen and resident of Pembroke Pines, Florida. From approximately 1995 to 2025, Plaintiff Flavia Alvarez was regularly exposed to PFAS through drinking water at residences in Miami, Florida; Hialeah, Florida; and Pembroke Pines, Florida.

21.     On or about June 2021, Plaintiff Flavia Alvarez was diagnosed with kidney cancer in Miami, Florida and subsequently underwent a left nephrectomy.

22.     Plaintiff Scott Anderson is a citizen and resident of Cocoa, Florida. From approximately 1982 to 2009, Plaintiff Scott Anderson was regularly exposed to PFAS through drinking water at residences in Jamestown, New York; Coraopolis, Pennsylvania; and Delray Beach, Florida.

23.     On or about 2010, Plaintiff Scott Anderson was diagnosed with testicular cancer in Tampa, Florida and subsequently underwent a left orchiectomy and chemotherapy treatments.

24.     Plaintiff Jessica Bailes is a citizen and resident of Sebring, Florida. From approximately 1987 to 1999, Plaintiff Jessica Bailes was regularly exposed to PFAS through drinking water at residences and workplaces in Clothier, West Virginia; Stollings, West Virginia; and Charleston, West Virginia.

25.     On or about August 2024, Plaintiff Jessica Bailes was diagnosed with kidney cancer in Jacksonville, Florida and subsequently underwent a partial right nephrectomy.

26.     Plaintiff Nissim Barokas is a citizen and resident of Sunny Isles Beach, Florida. From approximately 2001 to 2025, Plaintiff Nissim Barokas was regularly exposed to PFAS through drinking water at residences and workplaces in New York, New York; Golden Beach, Florida; Miami, Florida; Sunny Isles Beach, Florida; and Hollywood, Florida.

27.     On or about 2017, Plaintiff Nissim Barokas was diagnosed with testicular cancer in Miami, Florida and subsequently underwent a right orchiectomy and chemotherapy treatments.

28.     Plaintiff Eugene Barrios, Jr. is a citizen and resident of Orlando, Florida. From approximately 1972 to 2025, Plaintiff Eugene Barrios, Jr. was regularly exposed to PFAS through drinking water at residences and workplaces in Virginia Beach, Virginia; Brooklyn, New York; Orlando, Florida; Kissimmee, Florida; and Springfield, Massachusetts.

29.     On or about 2008, Plaintiff Eugene Barrios, Jr. was diagnosed with thyroid disease in Bridgewater, Massachusetts. On or about 2010, Plaintiff Eugene Barrios, Jr. was diagnosed with testicular cancer in Bridgewater, Massachusetts and subsequently underwent a right orchiectomy.

30.     Plaintiff Timothy Bergman is a citizen and resident of Zephyrhills, Florida. From approximately 1995 to 2016, Plaintiff Timothy Bergman was regularly exposed to PFAS through drinking water at residences and workplaces in Zephyrhills, Florida; Tampa, Florida; and Dade City, Florida.

31.     On or about October 2016, Plaintiff Timothy Bergman was diagnosed with kidney cancer in Zephyrhills, Florida and subsequently underwent a right nephrectomy.

32.     Plaintiff David Binder is a citizen and resident of Jacksonville, Florida. From approximately 1975 to 1995, Plaintiff David Binder was regularly exposed to PFAS through drinking water at schools and workplaces in Kalamazoo, Michigan and Okeechobee, Florida.

33.     On or about November 2012, Plaintiff David Binder was diagnosed with kidney cancer in Jacksonville, Florida and subsequently underwent a cystectomy, nephroureterectomy, and chemotherapy treatments.

34.     Plaintiff William Bryant, Jr. is a citizen and resident of Thonotosassa, Florida. From approximately 1990 to 2025, Plaintiff William Bryant, Jr. was regularly exposed to PFAS through drinking water at residences in Miami Beach, Florida; Miami Gardens, Florida; Melbourne, Florida; Maitland, Florida; Roanoke, Virginia; Greeley, Colorado; and Thonotosassa, Florida.

35.     On or about July 2022, Plaintiff William Bryant, Jr. was diagnosed with clear cell renal carcinoma in Greeley, Colorado and subsequently underwent a partial right nephrectomy.

36.     Plaintiff Karen Bucur is a citizen and resident of Estero, Florida. From approximately 1998 to 2025, Plaintiff Karen Bucur was regularly exposed to PFAS through drinking water at residences in Pompano Beach, Florida and Estero, Florida.

37.     On or about October 2021, Plaintiff Karen Bucur was diagnosed with clear cell renal carcinoma in Oradea, Romania and subsequently underwent a right nephrectomy. On or about February 2024, Plaintiff Karen Bucur was again diagnosed with clear cell renal carcinoma in Tampa, Florida and subsequently underwent a cryoablation. On or about 2024, Plaintiff Karen Bucur was diagnosed with thyroid disease in Bonita Springs, Florida. On or about March 2025, Plaintiff Karen Bucur began immunotherapy treatments in Naples, Florida.

38.     Plaintiff Swann Christopher is a citizen and resident of Orlando, Florida. From approximately 1979 to 2025, Plaintiff Swann Christopher was regularly exposed to PFAS through drinking water at residences in Kissimmee, Florida; Oviedo, Florida; Maitland, Florida; Orlando, Florida; Aurora, Colorado; Denver, Colorado; Englewood, Colorado; North Baldwin, New York; Jersey City, New Jersey; Bloomfield, New Jersey; Belleville, New Jersey; Brooklyn, New York; Highlands Ranch, Colorado; and Centennial, Colorado.

39.     On or about September 2023, Plaintiff Swann Christopher was diagnosed with kidney cancer in Kissimmee, Florida and subsequently underwent a partial right nephrectomy.

40.     Plaintiff Reginald Coonce, Jr. is a citizen and resident of Temple Terrace, Florida. From approximately 1978 to 2010, Plaintiff Reginald Coonce, Jr. was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Tampa, Florida.

41.     On or about October 2015, Plaintiff Reginald Coonce, Jr. was diagnosed with testicular cancer in Tampa, Florida and subsequently underwent a left orchiectomy.

42.     Plaintiff Olga Cordova is a citizen and resident of Miami, Florida. From approximately 1976 to 2022, Plaintiff Olga Cordova was regularly exposed to PFAS through drinking water at residences and workplaces in Coral Gables, Florida and Miami, Florida.

43.     On or about September 2012, Plaintiff Olga Cordova was diagnosed with clear cell renal carcinoma in Cleveland, Ohio and subsequently underwent a right partial nephrectomy. On or

about 2012, Plaintiff Olga Cordova was also diagnosed with thyroid disease in Miami, Florida. On or about September 2022, Plaintiff Olga Cordova was again diagnosed with clear cell renal carcinoma in Miami, Florida and subsequently underwent a left nephrectomy.

44.     Plaintiff Samuel Corolla, Sr. is a citizen and resident of Stuart, Florida. From approximately 1970 to 2015, Plaintiff Samuel Corolla, Sr. was regularly exposed to PFAS through drinking water at residences in Hialeah, Florida; Miami, Florida; and Pembroke Pines, Florida.

45.     On or about 1998, Plaintiff Samuel Corolla, Sr. was diagnosed with ulcerative colitis in Hollywood, Florida. On or about 2019, Plaintiff Samuel Corolla, Sr. was diagnosed with kidney cancer in Stuart, Florida and subsequently underwent a partial left nephrectomy.

46.     Plaintiff David Cuarezma is a citizen and resident of Hialeah, Florida. From approximately 1995 to 2025, Plaintiff David Cuarezma was regularly exposed to PFAS through drinking water at residences, schools, and workplaces in Hialeah, Florida; Miami Lakes, Florida; and Miami, Florida.

47.     On or about May 2024, Plaintiff David Cuarezma was diagnosed with testicular cancer in Hialeah, Florida and subsequently underwent a right orchiectomy and chemotherapy treatments.

48.     Plaintiff Jay Davis is a citizen and resident of West Palm Beach, Florida. From approximately 1984 to 2020, Plaintiff Jay Davis was regularly exposed to PFAS through drinking water at residences and workplaces in Pompano Beach, Florida; Lauderhill, Florida; Deerfield Beach, Florida; and Margate, Florida.

49.     On or about February 2021, Plaintiff Jay Davis was diagnosed with clear cell renal carcinoma in Loxahatchee, Florida and subsequently underwent a nephrectomy, adrenalectomy, retroperitoneal lymph node dissection, multiple regional lymphadenectomies, immunotherapy

treatments, and radiation treatments. On or about August 2022, Plaintiff Jay Davis was diagnosed with thyroid disease in Palm Beach Gardens, Florida.

50.     Plaintiff Doak Decker is a citizen and resident of Pensacola, Florida. From approximately 1985 to 2025, Plaintiff Doak Decker was regularly exposed to PFAS through drinking water at residences in Lima, Ohio; North Baltimore, Ohio; Bowling Green; Ohio; Greenville, South Carolina; and Pensacola, Florida.

51.     On or about August 2024, Plaintiff Doak Decker was diagnosed with kidney cancer in Pensacola, Florida and subsequently underwent a partial right nephrectomy.

52.     Plaintiff Leonard Dinkin is a citizen and resident of Stuart, Florida. From approximately 1976 to 2025, Plaintiff Leonard Dinkin was regularly exposed to PFAS through drinking water at residences in Canoga Park, Florida; Westwood, New Jersey; Staten Island, New York; Ellicott City, Maryland; Philadelphia, Pennsylvania; Collegeville, Pennsylvania; and Stuart Florida.

53.     On or about January 2018, Plaintiff Leonard Dinkin was diagnosed with kidney cancer in Stuart, Florida and subsequently underwent a partial bilateral nephrectomy.

54.     Plaintiff Jason Donner is a citizen and resident of Miami, Florida. From approximately 2002 to 2024, Plaintiff Jason Donner was regularly exposed to PFAS through drinking water at residences in Baltimore, Maryland; Arlington, Virginia; Miami, Florida; Miami Beach, Florida; Coral Gables, Florida; Pembroke Pines, Florida; and Doral, Florida.

55.     On or about December 2018, Plaintiff Jason Donner was diagnosed with clear cell renal carcinoma in Miami Beach, Florida and subsequently underwent a radical right nephrectomy.

56.     Plaintiff Edward Dufour, Jr. is a citizen and resident of Wilmauma, Florida. From approximately 1978 to 2008, Plaintiff Edward Dufour, Jr. was regularly exposed to PFAS through

drinking water at residences and workplaces in Norfolk, Virginia; Coventry, Rhode Island; Broomfield, Colorado; Tampa; Florida; and Enfield, Connecticut.

57.     On or about 2016, Plaintiff Edward Dufour, Jr. was diagnosed with kidney cancer in St. Petersburg, Florida and subsequently underwent a partial left nephrectomy.

58.     Plaintiff Roderrick Eddington is a citizen and resident of North Bay Village, Florida. From approximately 1986 to 2025, Plaintiff Roderrick Eddington was regularly exposed to PFAS through drinking water at residences and workplaces in Jersey City, New Jersey; Hackensack, New Jersey; Hillside, New Jersey; Oakland Park, Florida; North Bay Village, Florida; Miami, Florida; and Miami Beach, Florida.

59.     On or about 2009, Plaintiff Roderrick Eddington was diagnosed with kidney cancer in Miami, Florida and subsequently underwent a radical left nephrectomy.

60.     Plaintiff Victor Fernandez Aponte is a citizen and resident of Miami, Florida. From approximately 1970 to 2025, Plaintiff Victor Fernandez Aponte was regularly exposed to PFAS through drinking water at residences and workplaces in Brooklyn, New York; Bronx, New York; Flushing, New York; and Miami, Florida.

61.     On or about October 14, 2023, Plaintiff Victor Fernandez Aponte was diagnosed with clear cell renal carcinoma in Miami, Florida and subsequently underwent a radical right nephrectomy.

62.     Plaintiff Michael Flanagan is a citizen and resident of Tampa, Florida. From approximately 1984 to 2025, Plaintiff Michael Flanagan was regularly exposed to PFAS through drinking water at residences in Savannah, Georgia and Tampa, Florida.

63.     On or about January 21, 2025, Plaintiff Michael Flanagan was diagnosed with clear cell renal carcinoma in Tampa, Florida and subsequently underwent a partial left nephrectomy.

64.     Plaintiff Ronald Flaum is a citizen and resident of Plantation, Florida. From approximately 1970 to 2025, Plaintiff Ronald Flaum was regularly exposed to PFAS through drinking water at residences in North Miami Beach, Florida; Miami, Florida; and Plantation, Florida.

65.     On or about April 2021, Plaintiff Ronald Flaum was diagnosed with kidney cancer in Miami, Florida and subsequently underwent a radical right nephrectomy and immunotherapy treatment.

66.     Plaintiff Rosendo Garcia is a citizen and resident of Miami, Florida. From approximately 1985 to 2025, Plaintiff Rosendo Garcia was regularly exposed to PFAS through drinking water at residences in Miami, Florida.

67.     On or about April 2013, Plaintiff Rosendo Garcia was diagnosed with kidney cancer in Miami, Florida and subsequently underwent a radical left nephrectomy.

68.     Plaintiff Joyce Gargar is a citizen and resident of Bradenton, Florida. From approximately 1973 to 2025, Plaintiff Joyce Gargar was regularly exposed to PFAS through drinking water at residences and workplaces in Bradenton, Florida.

69.     On or about May 2013, Plaintiff Joyce Gargar was diagnosed with clear cell renal carcinoma in Bradenton, Florida and subsequently underwent a radical left nephrectomy. On or about 2013, Plaintiff Joyce Gargar was also diagnosed with thyroid disease. On or about March 2015, Plaintiff Joyce Gargar was again diagnosed with kidney cancer in Bradenton, Florida and subsequently underwent immunotherapy, radiation, and chemotherapy.

70.     Plaintiff Raniero Gimeno is a citizen and resident of Boynton Beach, Florida. From approximately 1994 to 2024, Plaintiff Raniero Gimeno was regularly exposed to PFAS through drinking water at residences in Miami, Florida; Boston, Massachusetts; Springfield, Massachusetts; Longmeadow, Massachusetts; Wilton Manors, Florida; and Glastonbury, Connecticut.

71.     On or about July 2019, Plaintiff Raniero Gimeno was diagnosed with testicular cancer in Miami, Florida and subsequently underwent a total right orchiectomy and chemotherapy treatment.

72.     Plaintiff Cid Gomes is a citizen and resident of Pembroke Pines, Florida. From approximately 1993 to 2024, Plaintiff Cid Gomes was regularly exposed to PFAS through drinking water at residences in Newark, New Jersey; Miami, Florida; Fort Lauderdale, Florida; Tampa, Florida; Miramar, Florida; and Pembroke Pines, Florida.

73.     On or about February 6, 2015, Plaintiff Cid Gomes was diagnosed with kidney cancer in Weston, Florida and subsequently underwent a partial right nephrectomy.

74.     Plaintiff James Griffin is a citizen and resident of Hudson, Florida. From approximately 1984 to 2014, Plaintiff James Griffin was regularly exposed to PFAS through drinking water at residences in Clearwater, Florida and Holiday, Florida.

75.     On or about September 2022, Plaintiff James Griffin was diagnosed with kidney cancer in Hudson, Florida and subsequently underwent a radical right nephrectomy.

76.     Plaintiff Frances Hamilton is a citizen and resident of Tarpon Springs, Florida. From approximately 1976 to 2025, Plaintiff Frances Hamilton was regularly exposed to PFAS through drinking water at residences in Northglenn, Colorado and Tarpon Springs, Florida.

77.     On or about 1988, Plaintiff Frances Hamilton was diagnosed with thyroid disease. On or about January 2018, Plaintiff Frances Hamilton was diagnosed with clear cell renal carcinoma in Trinity, Florida and subsequently underwent a radical right nephrectomy and immunotherapy treatment.

78.     Plaintiff Johnny Hardway is a citizen and resident of Alva, Florida. From approximately 1986 to 2025, Plaintiff Johnny Hardway was regularly exposed to PFAS through drinking water at residences in Lehigh Acres, Florida and Alva, Florida.

79.     On or about 2008, Plaintiff Johnny Hardway was diagnosed with testicular cancer in Fort Meyers, Florida and subsequently underwent a total left orchiectomy and chemotherapy.

80.     Plaintiff Harold Hilliard, Jr. is a citizen and resident of Zephyrhills, Florida. From approximately 2012 to 2025, Plaintiff Harold Hilliard, Jr. was regularly exposed to PFAS through drinking water at residences in Great Falls, Montana and Tampa, Florida.

81.     On or about 2019, Plaintiff Harold Hilliard, Jr. was diagnosed with kidney cancer in Largo, Florida and subsequently underwent a bilateral radical nephrectomy.

82.     Plaintiff Katherine Hunter is a citizen and resident of Largo, Florida. From approximately 1999 to 2017, Plaintiff Katherine Hunter was regularly exposed to PFAS through drinking water at residences in Fort Huachuca, Arizona; Fort Cavazos, Killeen, Texas; Fort Wolters, Mineral Wells, Texas; White Sands Missile Range, White Sands, New Mexico; Miami, Florida; and Albuquerque, New Mexico.

83.     On or about November 2018, Plaintiff Katherine Hunter was diagnosed with kidney cancer in Norwalk, Connecticut and subsequently underwent a radical right nephrectomy.

84.     Plaintiff Vivian Jenkins is a citizen and resident of Davie, Florida. From approximately 1991 to 1995, Plaintiff Vivian Jenkins was regularly exposed to PFAS through drinking water at residences in Jensen Beach, Florida; Pembroke Pines, Florida; and Hollywood, Florida.

85.     On or about 2024, Plaintiff Vivian Jenkins was diagnosed with clear cell renal carcinoma in Weston, Florida and subsequently underwent a partial nephrectomy.

86.     Plaintiff Bruce Kinsey is a citizen and resident of St. Petersburg, Florida. From approximately 1975 to 2021, Plaintiff Bruce Kinsey was regularly exposed to PFAS through drinking water at residences in Clearwater, Florida and Irwin, Pennsylvania.

87.     On or about 2022, Plaintiff Bruce Kinsey was diagnosed with kidney cancer in Clearwater, Florida and subsequently underwent a radical right nephrectomy.

88.     Plaintiff Felix Kizhner is a citizen and resident of Sunny Isles Beach, Florida. From approximately 1981 to 2025, Plaintiff Felix Kizhner was regularly exposed to PFAS through drinking water at residences in Bloomfield, New Jersey; Newark, New Jersey; Woodhaven, New York; Glendale, New York; and Sunny Isles Beach, Florida.

89.     On or about July 2015, Plaintiff Felix Kizhner was diagnosed with testicular cancer in Aventura, Florida and subsequently underwent a total left orchiectomy and chemotherapy treatment.

90.     Plaintiff Douglas Kube is a citizen and resident of Coral Springs, Florida. From approximately 1970 to 2018, Plaintiff Douglas Kube was regularly exposed to PFAS through drinking water in Coral Springs, Florida; Sunrise, Florida; Margate, Florida; and Deerfield Beach, Florida.

91.     On or about January 2025, Plaintiff Douglas Kube was diagnosed with kidney cancer in Coral Springs, Florida and subsequently underwent a radical right nephrectomy and chemotherapy treatment.

92.     Plaintiff Michael LaGrone is a citizen and resident of St. Petersburg, Florida. From approximately 1970 to 2021, Plaintiff Michael LaGrone was regularly exposed to PFAS through drinking water at residences and workplaces in Fort Jackson, Columbia, South Carolina; Fort Bliss, El Paso, Texas; Schofield Barracks, Hawaii; Fort Cavazos, Texas; Augusta, Georgia; Dallas, Texas; Holiday, Florida; and Tampa, Florida.

93.     On or about 2018, Plaintiff Michael LaGrone was diagnosed with kidney cancer in Bay Pines, Florida and subsequently underwent a partial right nephrectomy and radiation treatment.

On or about 2023, Plaintiff Michael LaGrone was diagnosed with thyroid disease in Bay Pines, Florida.

94.     Plaintiff Walter Leblanc is a citizen and resident of Boynton, Forida. From approximately 1976 to 2025, Plaintiff Walter Leblanc was regularly exposed to PFAS through drinking water at residences and workplaces in Boynton Beach, Florida.

95.     On or about 2018, Plaintiff Walter Leblanc was diagnosed with testicular cancer in Boynton Beach, Florida and subsequently underwent a total right orchiectomy and radiation treatment.

96.     Plaintiff Robert Leen is a citizen and resident of Hollywood, Florida. From approximately 1970 to 2016, Plaintiff Robert Leen was regularly exposed to PFAS through drinking water at residences in North Miami, Florida; Lauderhill, Florida; and Sunrise, Florida.

97.     On or about July 2015, Plaintiff Robert Leen was diagnosed with testicular cancer in Seattle, Washington and subsequently underwent a total left orchiectomy. On or about 2017, Plaintiff Robert Leen was diagnosed with thyroid disease in Woodinville, Washington.

98.     Plaintiff Cecil Mann, Jr. is a citizen and resident of Vero Beach, Florida. From approximately 1975 to 2017, Plaintiff Cecil Mann, Jr. was regularly exposed to PFAS through drinking water at residences in Eustis, Florida.

99.     On or about December 2022, Plaintiff Cecil Mann, Jr. was diagnosed with kidney cancer in Vero Beach, Florida and subsequently underwent a radical right nephrectomy.

100.     Plaintiff Frances Marsh is a citizen and resident of DeFuniak Springs, Florida. From approximately 2015 to 2025, Plaintiff Frances Marsh was regularly exposed to PFAS in drinking water at her residence in DeFuniak Springs, Florida.

101.     On or about July 2020, Plaintiff Frances Marsh was diagnosed with kidney cancer in Crestview, Florida and subsequently underwent a partial left nephrectomy.

102.    Plaintiff Gena Mason is a citizen and resident of Clermont, Florida. From approximately 1990 to 2025, Plaintiff Gena Mason was regularly exposed to PFAS through drinking water at residences in Winter Garden, Florida; Apopka, Florida; Orlando, Florida; and Clermont, Florida.

103.    On or about October 2017, Plaintiff Gena Mason was diagnosed with kidney cancer in Orlando, Florida and subsequently underwent a radical left nephrectomy and chemotherapy treatment.

104.    Plaintiff Alan Mazzola is a citizen and resident of Orlando, Florida. From approximately 2005 to 2018, Plaintiff Alan Mazzola was regularly exposed to PFAS through drinking water at residences and workplaces in Mohegan Lake, New York; Mahopac, New York; Tampa, Florida; Charlotte, North Carolina; Apopka, Florida; and Orlando, Florida.

105.    On or about 2009, Plaintiff Alan Mazzola was diagnosed with kidney cancer in Altamonte Springs, Florida and subsequently underwent a radical right nephrectomy and ablation.

106.    Plaintiff Clayton Melson, III is a citizen and resident of Clermont, Florida. From approximately 2006 to 2025, Plaintiff Clayton Melson, III was regularly exposed to PFAS through drinking water at residences in Maitland, Florida; Orlando, Florida; Kissimmee, Florida; and Clermont, Florida.

107.    On or about 2018, Plaintiff Clayton Melson, III was diagnosed with kidney cancer in Davenport, Florida and subsequently underwent a radical right nephrectomy.

108.    Plaintiff Christine Miller is a citizen and resident of Tampa, Florida. From approximately 1989 to 2025, Plaintiff Christine Miller was regularly exposed to PFAS through drinking water at residences and workplaces in Santee, California; Holiday, Florida; and Tampa, Florida.

109.    On or about December 2023, Plaintiff Christine Miller was diagnosed with kidney cancer in Tampa, Florida and subsequently underwent a left nephroureterectomy and chemotherapy treatment.

110.    Plaintiff April Mobley is a citizen and resident of Rockledge, Florida. From approximately 1988 to 2016, Plaintiff April Mobley was regularly exposed to PFAS at residences in Albany, New York; Lauderdale Lakes, Florida; Los Angeles, California; and Carson, California.

111.    On or about July 2023, Plaintiff April Mobley was diagnosed with kidney cancer in Melbourne, Florida and subsequently underwent a right radical nephrectomy.

112.    Plaintiff Yousef Mourad is a citizen and resident of Pembroke Pines, Florida. From approximately 1991 to 2025, Plaintiff Yousef Mourad was regularly exposed to PFAS through drinking water at residences and workplaces in Miramar, Florida; Miami Gardens, Florida; Miami Lakes, Florida; Hialeah, Florida; and Pembroke Pines, Florida.

113.    On or about June 2009, Plaintiff Yousef Mourad was diagnosed with testicular cancer in Hollywood, Florida and subsequently underwent a total right orchiectomy, retroperitoneal lymph node dissection, chemotherapy, and immunotherapy treatment. On or about 2021, Plaintiff Yousef Mourad was diagnosed with thyroid disease in Weston, Florida.

114.    Plaintiff Melissa Myers is a citizen and resident of Lakeland, Florida. From approximately 1992 to 2025, Plaintiff Melissa Myers was regularly exposed to PFAS through drinking water at residences in Winter Haven, Florida; Cajon, California; Auburndale, Florida; and Lakeland, Florida.

115.    On or about February 2019, Plaintiff Melissa Myers was diagnosed with kidney cancer in Lakeland, Florida and subsequently underwent a partial left nephrectomy.

116.    Plaintiff William Nockengost is a citizen and resident of Fort Meyers, Florida. From approximately 1970 to 2014, Plaintiff William Nockengost was regularly exposed to PFAS through

drinking water at residences and workplaces in Homestead Air Reserve Base, Homestead, Florida; Fort Sam Houston, San Antonio, Texas; Fort Jackson, Columbia, South Carolina; Leavenworth, Kansas; Fort Worth, Texas; Fort Meyers, Florida; and North Fort Meyers, Florida.

117.    On or about January 2024, Plaintiff William Nockengost was diagnosed with kidney cancer in Fort Meyers, Florida and subsequently underwent a radical left nephrectomy, immunotherapy, and radiation treatment.

118.    Plaintiff Michael Okash is a citizen and resident of Largo, Florida. From approximately 1985 to 2025, Plaintiff Michael Okash was regularly exposed to PFAS through drinking water at residences and workplaces in Fort Leonard Wood, Missouri; Tampa, Florida; and Superior, Wisconsin.

119.    On or about September 2023, Plaintiff Michael Okash was diagnosed with kidney cancer in Duluth, Minnesota and subsequently underwent a radical left nephrectomy and chemotherapy treatment.

120.    Plaintiff George Orlando is a citizen and resident of DeFuniak Springs, Florida. From approximately 1979 to 2016, Plaintiff George Orlando was regularly exposed to PFAS through drinking water at residences in Wellington, Florida; West Palm Beach, Florida; Merrimack, New Hampshire; and Westfield, New York.

121.    On or about February 2023, Plaintiff George Orlando was diagnosed with kidney cancer in Miramar Beach, Florida and subsequently underwent a radical left nephrectomy.

122.    Plaintiff Vladimir Perez is a citizen and resident of Tampa, Florida. From approximately 2015 to 2024, Plaintiff Vladimir Perez was regularly exposed to PFAS through drinking water at residences in Miami, Florida; Raleigh, North Carolina; and Tampa, Florida.

123.     On or about June 5, 2024, Plaintiff Vladimir Perez was diagnosed with kidney cancer in Clearwater, Florida and subsequently underwent a radical right nephrectomy and chemotherapy treatment.

124.     Plaintiff Rhea Peters is a citizen and resident of Pensacola, Florida. From approximately 1970 to 2025, Plaintiff Rhea Peters was regularly exposed to PFAS through drinking water at residences and workplaces in Fort Carson, Colorado and Pensacola, Florida.

125.     On or about 2000, Plaintiff Rhea Peters was diagnosed with thyroid disease in Milton, Florida. On or about October 2011, Plaintiff Rhea Peters was diagnosed with kidney cancer in Pensacola, Florida and subsequently underwent a radical right nephrectomy.

126.     Plaintiff James Petrino is a citizen and resident of Palm Bay, Florida. From approximately 1970 to 1994, Plaintiff James Petrino was regularly exposed to PFAS through drinking water at residences in Northfield, New Jersey; Egg Harbor Township, New Jersey; and Margate, Florida.

127.     On or about December 2024, Plaintiff James Petrino was diagnosed with kidney cancer in Melbourne, Florida and subsequently underwent a partial left nephrectomy.

128.     Plaintiff Eddie Poke, Jr. is a citizen and resident of Miami, Florida. From approximately 1979 to 2025, Plaintiff Eddie Poke, Jr. was regularly exposed to PFAS through drinking water at residences and workplaces in Fort Dix, Pemberton Township, New Jersey; Fort Belvoir, Virgina; Fort Knox, Kentucky; Fort Campbell, Kentucky; Gainesville, Florida; Bronx, New York; Kissimmee, Florida; and Miami, Florida.

129.     On or about 2019, Plaintiff Eddie Poke, Jr. was diagnosed with kidney cancer in Miami, Florida and subsequently underwent a partial left nephrectomy.

130.     Plaintiff Jack Rand is a citizen and resident of Cooper City, Florida. From approximately 1982 to 2025, Plaintiff Jack Rand was regularly exposed to PFAS through drinking

water at residences and workplaces in Fort Jackson, Columbia, South Carolina; Fort Sill, Lawton, Oklahoma; North Miami, Florida; North Miami Beach, Florida; Miramar, Florida; and Cooper City, Florida.

131.    On or about November 2023, Plaintiff Jack Rand was diagnosed with kidney cancer in Davie, Florida and subsequently underwent an ablation.

132.    Plaintiff John Riley is a citizen and resident of Delray Beach, Florida. From approximately 1970 to 2025, Plaintiff John Riley was regularly exposed to PFAS through drinking water at residences in Holbrook, New York; Lake Ronkonkoma, New York; Miller Place, New York; and Delray Beach, Florida.

133.    On or about 2013, Plaintiff John Riley was diagnosed with kidney cancer in Boca Raton, Florida and subsequently underwent a radical right nephrectomy.

134.    Plaintiff Robert Ringier is a citizen and resident of Winter Park, Florida. From approximately 1975 to 2025, Plaintiff Robert Ringier was regularly exposed to PFAS through drinking water at residences in Woodland Hills, California; Playa Del Rey, California; Paso Robles, California; The Villages, Florida; and Winter Park, Florida.

135.    On or about November 2011, Plaintiff Robert Ringier was diagnosed with kidney cancer in Orlando, Florida and subsequently underwent a radical right nephrectomy.

136.    Plaintiff Benjamin Rivera Cruz is a citizen and resident of Orlando, Florida. From approximately 1970 to 2025, Plaintiff Benjamin Rivera Cruz was regularly exposed to PFAS through drinking water at residences and workplaces in Vineland, New Jersey; Rahway, New Jersey; Perth Amboy, New Jersey; Morrisville, Pennsylvania; and Orlando, Florida.

137.    On or about 2014, Plaintiff Benjamin Rivera Cruz was diagnosed with thyroid disease in Orlando, Florida. On or about 2018, Plaintiff Benjamin Rivera Cruz was diagnosed with kidney cancer in Orlando, Florida and subsequently underwent a radical right nephrectomy. On or about

2021, Plaintiff Benjamin Rivera Cruz was again diagnosed with kidney cancer in Orlando, Florida and subsequently underwent immunotherapy treatment.

138.    Plaintiff John Rodriguez is a citizen and resident of Homestead, Florida. From approximately 1995 to 2025, Plaintiff John Rodriguez was regularly exposed to PFAS through drinking water at residences in Miami, Florida; Coral Gables, Florida; Hialeah, Florida; and Homestead, Florida.

139.    On or about 2023, Plaintiff John Rodriguez was diagnosed with kidney cancer in Miami, Florida and subsequently underwent a partial left nephrectomy.

140.    Plaintiff Cindy Rust is a citizen and resident of Davie, Florida. From approximately 1989 to 2005, Plaintiff Cindy Rust was regularly exposed to PFAS through drinking water at residences in Sunrise, Florida; Plantation, Florida; Davie, Florida; and Coconut Creek, Florida.

141.    On or about January 2005, Plaintiff Cindy Rust was diagnosed with clear cell renal carcinoma in Hollywood, Florida and subsequently underwent a radical right nephrectomy.

142.    Plaintiff Joseph Salazar is a citizen and resident of Orlando, Florida. From approximately 1995 to 2025, Plaintiff Joseph Salazar was regularly exposed to PFAs through drinking water at residences and workplaces in Orlando, Florida and Kissimmee, Florida.

143.    On or about April 16, Plaintiff Joseph Salazar was diagnosed with testicular cancer in Winter Garden, Florida and subsequently underwent a total right orchiectomy.

144.    Plaintiff William Schmitt is a citizen and resident of North Fort Meyers, Florida. From approximately 1980 to 2025, Plaintiff William Schmitt was regularly exposed to PFAS through drinking water at residences and workplaces in Astoria, New York; Long Island City, New York; South Richmond Hill, New York; Jamaica, New York; Washingtonville, New York; and North Fort Myers, Florida.

145.    On or about 2018, Plaintiff William Schmitt was diagnosed with kidney cancer in Fort Meyers, Florida and subsequently underwent a radical left nephrectomy.

146.    Plaintiff Kenneth Schouler is a citizen and resident of Titusville, Florida. From approximately 1973 to 2018, Plaintiff Kenneth Schouler was regularly exposed to PFAS through drinking water at residences and workplaces in Montague, Massachusetts and Orlando, Florida.

147.    On or about 2014, Plaintiff Kenneth Schouler was diagnosed with kidney cancer in Orlando, Florida and subsequently underwent a partial left nephrectomy. On or about 2019, Plaintiff Kenneth Schouler was again diagnosed with kidney cancer in Orlando, Florida and subsequently underwent a partial right nephrectomy.

148.    Plaintiff Ryan Schultz is a citizen and resident of Coral Springs, Florida. From approximately 1995 to 2025, Plaintiff Ryan Schultz was regularly exposed to PFAS through drinking water at residences and workplaces in Margate Florida; Coral Springs, Florida; Parkland, Florida; and Frederick, Colorado.

149.    On or about December 2012, Plaintiff Ryan Schultz was diagnosed with testicular cancer in Pompano Beach, Florida and subsequently underwent a total right orchiectomy and chemotherapy treatment.

150.    Plaintiff Bruce Schwartz is a citizen and resident of Orlando, Florida. From approximately 1974 to 2025, Plaintiff Bruce Schwartz was regularly exposed to PFAS through drinking water at residences and workplaces in Flushing, New York; Riverton, New York; and Orlando, Florida.

151.    On or about April 2018, Plaintiff Bruce Schwartz was diagnosed with clear cell renal carcinoma in Orlando, Florida and subsequently underwent a left radical nephrectomy, chemotherapy, and immunotherapy treatment. On or about 2019, Plaintiff Bruce Schwartz was diagnosed with thyroid disease.

152.    Plaintiff Jorge Serrano is a citizen and resident of Pompano Beach, Florida. From approximately 2003 to 2025, Plaintiff Jorge Serrano was regularly exposed to PFAS through drinking water at residences in Orlando, Florida; Margate, Florida; Lauderhill, Florida; and Pompano Beach, Florida.

153.    On or about March 17, 2025, Plaintiff Jorge Serrano was diagnosed with kidney cancer in Miami, Florida and subsequently underwent a radical right nephrectomy.

154.    Plaintiff Marsha Shanor is a citizen and resident of Ocala, Florida. From approximately 1972 to 2025, Plaintiff Marsha Shanor was regularly exposed to PFAS through drinking water at residences and workplaces in Coral Springs, Florida; Pompano Beach, Florida; and Ocala, Florida.

155.    On or about July 2012, Plaintiff Marsha Shanor was diagnosed with kidney cancer in Gainesville, Florida and subsequently underwent a partial right nephrectomy.

156.    Plaintiff Ryan Sims is a citizen and resident of Orlando, Florida. From approximately 1983 to 2025, Plaintiff Ryan Sims was regularly exposed to PFAS through drinking water at residences in St. Joseph, Minnesota; North Miami, Florida; Orlando, Florida; and Apopka, Florida.

157.    On or about November 2011, Plaintiff Ryan Sims was diagnosed with clear cell renal carcinoma in Orlando, Florida and subsequently underwent a radical nephrectomy.

158.    Plaintiff Steven Stiefel is a citizen and resident of Palm Harbor, Florida. From approximately 1970 to 1995, Plaintiff Steven Stiefel was regularly exposed to PFAS through drinking water at residences and workplaces in Hershey, Pennsylvania; Howard Beach, New York; Jamaica, New York; Forest Hills, New York; and Tampa, Florida.

159.    On or about August 2024, Plaintiff Steven Stiefel was diagnosed with kidney cancer in Dunedin, Florida and subsequently underwent immunotherapy and chemotherapy treatment.

160.    Plaintiff Richard Stoer is a citizen and resident of Lakeland, Florida. From approximately 1988 to 2025, Plaintiff Richard Stoer was regularly exposed to PFAS through drinking water at residences in Lakeland, Florida and Ocala, Florida.

161.    On or about 2006, Plaintiff Richard Stoer was diagnosed with testicular cancer in Lakeland, Florida and subsequently underwent a total left orchiectomy and chemotherapy treatment.

162.    Plaintiff Kyle Titlebaum is a citizen and resident of Cape Coral, Florida. From approximately 2000 to 2023, Plaintiff Kyle Titlebaum was regularly exposed to PFAS through drinking water in Fort Myers Beach, Florida; Fort Myers, Florida; and Lehigh Acres, Florida.

163.    On or about October 2020, Plaintiff Kyle Titlebaum was diagnosed with clear cell renal carcinoma in Fort Myers, Florida and subsequently underwent a radical right nephrectomy.

164.    Plaintiff John Tuttle, III is a citizen and resident of Winter Haven, Florida. From approximately 1986 to 2025, Plaintiff John Tuttle, III was regularly exposed to PFAS through drinking water at residences in Winter Haven, Florida; Casselberry, Florida; Tampa, Florida; and Lakeland, Florida.

165.    On or about January 2015, Plaintiff John Tuttle, III was diagnosed with kidney cancer in Winter Haven, Florida and subsequently underwent a partial left nephrectomy.

166.    Plaintiff Jose Vega is a citizen and resident of Miami, Florida. From approximately 1996 to 2025, Plaintiff Jose Vega was regularly exposed to PFAS through drinking water at residences in Central Islip, New York; Miami, Florida; Tampa, Florida; Kissimmee, Florida; and Miami Lakes, Florida.

167.    On or about September 2021, Plaintiff Jose Vega was diagnosed with kidney cancer in Miami, Florida and subsequently underwent a tumor removal and radical right nephrectomy.

168.    Plaintiff Jennifer Walaitis Johnson is a citizen and resident of Oviedo, Florida. From approximately 1985 to 2023, Plaintiff Jennifer Walaitis Johnson was regularly exposed to PFAS

through drinking water at residences in Orlando, Florida; Winter Park, Florida; Oviedo, Florida; Maitland, Florida; and Altamonte Springs, Florida.

169.    On or about February 20, 2024, Plaintiff Jennifer Walaitis Johnson was diagnosed with clear cell renal carcinoma in Winter Park, Florida and subsequently underwent a partial right nephrectomy.

170.    Plaintiff Alan Willey, Jr is a citizen and resident of Zephyrhills, Florida. From approximately 1992 to 2012, Plaintiff Alan Willey, Jr was regularly exposed to PFAS through drinking water in residences and workplaces in Tampa, Florida.

171.    On or about January 2022, Plaintiff Alan Willey, Jr was diagnosed with kidney cancer in Zephyrhills, Florida and subsequently underwent a partial left nephrectomy.

172.    Plaintiff Richard Winters is a citizen and resident of Fort Pierce, Florida. From approximately 1999 to 2020, Plaintiff Richard Winters was regularly exposed to PFAS through drinking water at residences and workplaces in Lackland Air Force Base, San Antonio, Texas; Kincheloe Air Force Base, Kincheloe, Michigan; Tunkhannock, Pennsylvania; and Miami, Florida.

173.    On or about May 2023, Plaintiff Richard Winters was diagnosed with clear cell renal carcinoma in Sebastian, Florida and subsequently underwent a radical left nephrectomy, chemotherapy, and immunotherapy treatment.

174.    Plaintiff David Wolfe is a citizen and resident of St. Cloud, Florida. From approximately 1978 to 2003, Plaintiff David Wolfe was regularly exposed to PFAS through drinking water at residences and workplaces in Winter Park, Florida; Casselberry, Florida; Oviedo, Florida; and Winter Springs, Florida.

175.    On or about May 2014, Plaintiff David Wolfe was diagnosed with kidney cancer in Winter Park, Florida and subsequently underwent a radical left nephrectomy.

176. Plaintiff Brett Audette is a citizen and resident of Colon, Michigan. From approximately 1990 to 2021, Plaintiff Brett Audette was regularly exposed to PFAS through drinking water at residences and workplaces in Eglin Air Force Base, Valparaiso, Florida and Elkhart, Indiana.

177. On or about May 2015, Plaintiff Brett Audette was diagnosed with kidney cancer in Ann Arbor, Michigan and subsequently underwent a radical left nephrectomy.

178. Plaintiff Sandra Foytik is a citizen and resident of Baldwin, Michigan. From approximately 1978 to 2025, Plaintiff Sandra Foytik was regularly exposed to PFAS through drinking water at residences and workplaces in Plantation, Florida; Hollywood, Florida; Pembroke Pines, Florida; Forney, Texas; Ocala, Florida; and Baldwin, Michigan.

179. On or about October 2012, Plaintiff Sandra Foytik was diagnosed with clear cell renal carcinoma in Wellington, Florida and subsequently underwent a radical left nephrectomy.

180. Plaintiff Wilford Wackler, Sr. is a citizen and resident of Mussey Township, Michigan. From approximately 1977 to 1990, Plaintiff Wilford Wackler, Sr. was regularly exposed to PFAS through drinking water at residences and workplaces in Lackland Air Force Base, Texas; Camp Bullis, San Antonio, Texas; Griffiss Air Force Base, Rome, New York; Bradford, Ohio; and Lakeland, Florida.

181. On or about July 2007, Plaintiff Wilford Wackler, Sr. was diagnosed with clear cell renal carcinoma in Port Huron, Michigan and subsequently underwent a partial left nephrectomy.

182. Plaintiff Kathleen Ferry is a citizen and resident of Rutherfordton, North Carolina. From approximately 1977 to 2000, Plaintiff Kathleen Ferry was regularly exposed to PFAS through drinking water at residences and schools in Hollywood, Florida and Pembroke Pines, Florida.

183. On or about 2005, Plaintiff Kathleen Ferry was diagnosed with kidney cancer in Hendersonville, North Carolina and subsequently underwent a radical right nephrectomy.

**B. Defendants**

184.    Upon information and belief, the following Defendants designed, manufactured, formulated, marketed, promoted, distributed, and/or sold the Fluorosurfactant Products to which Plaintiffs were exposed.

185.    **3M:** Defendant 3M Company (f/k/a Minnesota Mining and Manufacturing Company) ("3M") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 3M Center, St. Paul, Minnesota 55144. At all times relevant, 3M manufactured, marketed, promoted, distributed, and/or sold AFFF containing PFOA and/or PFOS used to fight fires at numerous military bases, airports, and other locations throughout the country.

186.    3M is the only company that manufactured and/or sold AFFF containing PFOS.

187.    **AGC AMERICA:** Defendant AGC Chemical Americas, Inc. ("AGC America") is a Delaware corporation with its principal business office at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC America is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

188.    **AGC:** Defendant AGC, Inc. f/k/a Asahi Glass Co., Ltd. ("AGC"), is a corporation organized under the laws of Japan and does business throughout the United States. AGC has its principal place of business at 1-5-1, Marunouchi, Chiyoda-ku, Tokyo 100-8405 Japan.

189.    **ARCHROMA US:** Defendant Archroma U.S., Inc. ("Archroma US") is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217. Upon information and belief, Archroma U.S., Inc. is a subsidiary of Archroma Management, LLC, and supplied Fluorosurfactant Products for use in AFFF.

190.    **ARKEMA:** Defendant Arkema, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

191.   **BASF:** Defendant BASF Corporation ("BASF") is a Delaware corporation with its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon information and belief, BASF acquired Ciba-Geigy Corporation and/or Ciba Specialty Chemicals.

192.   **BUCKEYE:** Defendant Buckeye Fire Equipment Company ("Buckeye") is a foreign corporation organized and existing under the laws of the State of Ohio, with its principal place of business at 110 Kings Road, Mountain, North Carolina 28086. This Defendant manufactured and sold AFFF that contained PFOA.

193.   **CHEMDESIGN:** Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation with its principal place of business located at 2 Stanton Street, Marinette, Wisconsin 54143.

194.   **CHEMGUARD:** Defendant Chemguard, Inc. ("Chemguard") is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143. This Defendant manufactured and sold AFFF that contained PFOA.

195.   **CHEM INC.:** Defendant Chemicals Incorporated ("Chem Inc.") is a Texas corporation with its principal place of business located at 12321 Hatcherville Road, Baytown, Texas 77521.

196.   **CLARIANT:** Defendant Clariant Corporation ("Clariant") is a New York corporation with its principal place of business located at 4000 Monroe Road, Charlotte, North Carolina 28205.

197.   **CORTEVA:** Defendant Corteva, Inc. ("Corteva") is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

198.   **DEEPWATER:** Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation with its principal place of business located at 196122 E County Road 40, Woodward,

Oklahoma 73801.

199.    **DUPONT DE NEMOURS:** Defendant DuPont De Nemours, Inc. (f/k/a DowDuPont, Inc.) is a Delaware corporation with its principal place of business located at 974 Centre Road, Building 730, Wilmington, Delaware 19805. DowDuPont, Inc. was formed in 2017 as a result of the merger of Dow Chemical and DuPont.

200.    Upon information and belief, Corteva was originally formed in February 2018 as a wholly-owned subsidiary of DowDuPont, Inc. On June 1, 2019, DowDuPont, Inc. separated its agriculture business through the spin-off of Corteva. In doing so, DowDuPont, Inc. distributed all issued and outstanding shares of Corteva common stock to DowDuPont, Inc. stockholders by way of a pro-rata dividend. Upon information and belief, following that distribution, Corteva became the direct parent of DuPont, and holds certain DowDuPont, Inc. assets and liabilities.

201.    Following the June 1, 2019 spin-off of Corteva and of another entity, Dow, Inc., DowDuPont, Inc. changed its name to DuPont De Nemours, Inc. ("New DuPont"). Upon information and belief, New DuPont retained assets in the specialty products business lines, as well as the balance of the financial assets and liabilities of DuPont not assumed by Corteva.

202.    **DYNAX:** Defendant Dynax Corporation ("Dynax") is a Delaware corporation with its principal place of business located at 103 Fairview Park Drive, Elmsford, New York 10523. Upon information and belief, this Defendant manufactured Fluorosurfactant Products for use in AFFF.

203.    **DUPONT:** Defendant E. I. Du Pont De Nemours and Company ("DuPont") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

204.    **NATION FORD:** Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation with its headquarters located at 2300 Banks Street, Fort Mill, South Carolina 29715.

205.   **CHEMOURS:** Defendant The Chemours Company ("Chemours") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware 19899.

206.   In 2015, DuPont spun off its "Performance Chemicals" business to Chemours, along with certain environmental liabilities. Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of PFAS compounds and products that contain PFAS compounds.

207.   **CHEMOURS FC:** Defendant The Chemours Company FC LLC ("Chemours FC"), successor in interest to DuPont Chemical Solutions Enterprise, is a Delaware limited liability company that conducts business throughout the United States. Its principal place of business is 1007 Market Street Wilmington, Delaware, 19899.

208.   **TYCO:** Defendant Tyco Fire Products L.P. ("Tyco") is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business located at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446.

209.   Tyco is an indirect subsidiary that is wholly owned by Johnson Controls International P.L.C., an Irish public limited company listed on the New York Stock Exchange

210.   Tyco manufactures the Ansul brand of products and is the successor-in-interest to the corporation formerly known as The Ansul Company ("Ansul") (hereinafter, Ansul and/or Tyco as the successor-in-interest to Ansul will be referred to collectively as "Tyco"). At all times relevant, Tyco manufactured, marketed, promoted, distributed, and/or sold fire suppression products, including AFFF that contained fluorocarbon surfactants containing PFAS.

211.   Upon information and belief, Defendant John Does 1-49 were manufacturers and/or

sellers of AFFF products. Although the identities of the John Doe Defendants are currently unknown, it is expected that their names will be ascertained during discovery, at which time the Plaintiffs will move for leave of this Court to add those individuals' actual names to the Complaint as Defendants.

212.    All of the foregoing Defendants, upon information and belief, have previously conducted and/or currently conduct their business throughout the United States. Moreover, some of the foregoing Defendants, if not all, have conducted and/or are currently conducting business in the State of Florida.

213.    Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates and divisions of the named Defendants.

214.    The term "Defendants," without naming any specific one, refers to all Defendants named in this Complaint jointly and severally. When reference is made to any act or omission of the Defendants, it shall be deemed to mean that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of Defendants, and did so while acting within the scope of their employment or agency.

### III.    JURISDICTION & VENUE

215.    This Court has subject matter jurisdiction over this action because this is an action for damages in excess of thirty thousand dollars ($30,000.00).

216.    Venue is appropriate in this county pursuant to Fla. Stat. § 47.011 because a substantial part of the events and omissions giving rise to Plaintiffs' causes of action accrued in this County, and because property and resources affected by Defendants' conduct are located in this County.

## IV.   FACTUAL ALLEGATIONS

### A.   The PFAS Contaminants at Issue: PFOA and PFOS

217.   Both PFOA and PFOS fall within a class of chemical compounds known as perfluoroalkyl acids ("PFAAs"). PFAAs are then part of a larger chemical family recognized as per- and polyfluoroalkyl substances ("PFAS"). PFAA is composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, meanwhile the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature.

218.   PFAAs are sometimes described as long-chain and short-chain compounds, depending on the number of carbon atoms contained in the carbon chain. PFOA and PFOS are considered long-chain PFAAs because they each have eight carbon atoms in their chains.

219.   PFOA and PFOS are stable, man-made chemicals.  They are highly water soluble, persistent in the environment and resistant to biologic, environmental, or photochemical degradation. Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

220.   Both PFOA and PFOS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver.  They have been found globally in water, soil and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1]

221.   Moreover, PFOA and PFOS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years

---

[1] EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS),* Document No. EPA 822-R-16-002 (May 2016), available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025);  EPA, *Health Effects Support Document for Perfluorooctanoic Acid (PFOA)*, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfoa_hesd_final-plain.pdf (last accessed March 11, 2025).

and can increase with additional exposures.[2]

222.    Notably, from the time these two compounds were first produced, information has emerged showing negative health effects caused by exposure to PFOA and PFOS. According to EPA, PFOA and PFOS are associated with high cholesterol, thyroid disorders, pregnancy-induced hypertension, preeclampsia, reproductive, developmental, and systemic effects, and cancers.[3]

223.    The EPA has warned that there is suggestive evidence of the carcinogenic potential for PFOA and PFOS in humans.[4]

224.    EPA continues to research the effects of PFAS.  In June 2022, after evaluating over 400 studies published since 2016 and applying human health risk assessment approaches, tools, and models EPA concluded that the new data indicates that the levels of PFOA and/or PFOS exposure at which negative outcomes could occur are much lower than previously understood when the agency issued its 2016 HAs for PFOA and PFOS (70 parts per trillion or ppt).  EPA therefore announced new Interim Updated Health Advisory levels for PFOA of 0.004 ppt and 0.02 ppt for PFOS.[5]

225.    In April, 2024, EPA established legally enforceable levels, called Maximum Contaminant Levels (MCLs), for six PFAS in drinking water: PFOA, PFOS, PFHxS, PFNA, and HFPO-DA as contaminants with individual MCLs, and PFAS mixtures containing at least two or more of PFHxS, PFNA, HFPO-DA, and PFBS using a Hazard Index MCL to account for the

---

[2] *See* notes 1, 2, *supra.  See also* EPA, Technical *Fact Sheet – Perfluorooctane Sulfonate (PFOS) and Perfluorooctanoic Acid (PFOA),* available at  https://www.regulations.gov/document/EPA-HQ-TRI-2022-0270-0009 (last accessed March 11, 2025).

[3] *Id.*

[4] *See* EPA, *Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)*, Document Number: 822 R-16-002, available at https://www.epa.gov/sites/default/files/2016-05/documents/pfos_hesd_final_508.pdf (last accessed March 11, 2025).
[5] EPA, *Technical Fact Sheet: Drinking Water Health Advisories for Four PFAS (PFOA, PFOS, GenX chemicals, and PFBS)*, Document Number 822-F-22-002, available at  https://nepis.epa.gov/Exe/ZyPURL.cgi?Dockey=P10154ST.txt (last accessed March 11, 2025).

combined and co-occurring levels of these PFAS in drinking water. EPA also finalized health-based, non-enforceable Maximum Contaminant Level Goals (MCLGs) for these PFAS.   The MCLs for PFOA and PFOS are each 4 parts per trillion ("ppt").[6]

**B.**   **Aqueous Film-Forming Foam (AFFF) Contained PFOS and/or PFOA at Relevant Times**

226.   Aqueous Film-Forming Foam ("AFFF") is a water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports, among other places.

227.   Generally, AFFF is used to extinguish fires, particularly fires that involve petroleum or other flammable liquids. AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

228.   The AFFF products made by Defendants during the relevant time period contained either or both PFOA and PFOS. AFFF produced, marketed, and/or sold by 3M was the only AFFF produced from fluorochemicals manufactured through electrochemical fluorination ("ECF"), a process that generates PFOS. All other Defendants used telomerization to produce AFFF. Fluorochemicals synthesized through telomerization degrade into PFOA, but not PFOS.

229.   When used as the Defendants intended and directed, AFFF causes PFOA, PFOS, and/or other PFAS compounds to enter the body of those handling, using, or otherwise exposed to the foam (including firefighters).   When using AFFF, firefighters may absorb PFOA and PFOS through their skin, inhale PFOA and PFOS compounds, or inadvertently ingest PFOA and PFOS compounds. Additionally, when used as the Defendants intended and directed, AFFF causes PFOA and PFOS to seep into groundwater, and thus, drinking water supplies in the areas in which it is used. Once in the water supply, PFOA and PFOS can travel long distances from where the AFFF was used.

---

[6] EPA, Per- and *Polyfluoroalkyl Substances (PFAS), Final PFAS National Primary Drinking Water Regulation*, available at https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (last accessed March 11 2025).

This has resulted in widespread contamination of drinking water supplies with PFOA and PFOS nationwide.

230.    Notably, AFFF can be made without PFOA and PFOS.  Unlike AFFF made with PFOA or PFOS, fluorine-free foams do not pose a significant health risk to individuals.

231.    Despite having knowledge of this fact—as well as having knowledge regarding the toxic nature of AFFF made with PFOA and/or PFOS—Defendants continued to manufacture, distribute and/or sell AFFF with PFOA and/or PFOS, which has ultimately led to Plaintiffs' injuries.

### C.  Defendants' Knowledge of PFOA and PFOS Hazards

232.    On information and belief, by the 1970s, Defendants knew, or reasonably should have known, among other things, that: (1) PFOA and PFOS are toxic; and (2) when AFFF is used per the instructions given by the manufacturer, PFOA and PFOS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

233.    At all times pertinent herein, Defendants also knew or should have known that PFOA and PFOS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens that cause genetic damage.

234.    For instance, in 1980, 3M published data in peer reviewed literature showing that humans retain PFOA in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOA from their body after all

exposures had ceased.[7]

235.    By the early 1980s, the industry suspected a correlation between PFOA exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOA in workers' bodies and birth defects in children of workers.

236.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects—one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.[8]

237.    Beginning in 1983, 3M documented a trend of increasing levels of PFOA in the bodies of 3M workers. In an internal memo, 3M's medical officer warned: "[W]e must view this present trend with serious concern. It is certainly possible that [...] exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."[9]

238.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; 3M's PFOS-based AFFF production did not fully phase out until 2002.  The company stopped producing PFOA at approximately the same time.

239.    From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed and sold Fluorosurfactant Products, including Teflon nonstick cookware,

---

[7] See Ubel, F.A., Sorenson, S.D., and Roach, D.E., *Health status of plant workers exposed to fluorochemicals - a preliminary report.* Journal Am. Ind Hyg. Assoc. J 41:584-89 (1980).

[8] See DuPont, *C-8 Blood Sampling Results,* available at https://static.ewg.org/files/PFOA_013.pdf?_gl=1*anldwl*_ga*NTgxNzgzMTc3LjE2ODI2ODk5ODk.*_ga_CS21GC49KT*MTY4MzU4Nzg2OC4yLjEuMTY4MzU4Nzk0MC4wLjAuMA..&_ga=2.26293428.885409355.1683587869-581783177.1682689989 (last accessed March 11, 2025).

[9] See 3M, Internal Memorandum, *Organic Fluorine Levels*, (August 31, 1984), Office of Minnesota Attorney General, Exhibit List, No. 1313,-available at https://www.ag.state.mn.us/Office/Cases/3M/StatesExhibits.asp (last accessed March 11, 2025).

and more recently PFAS feedstocks such as Forafac 1157 N, for use in the manufacturing of AFFF products.

240.    On information and belief, by no later than 2001 Old DuPont manufactured, produced, marketed, and sold Fluorosurfactant Products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in their AFFF products that were discharged into the environment and harmed Plaintiffs.

241.    DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, or the environment.[10]

242.    By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont $16,500,000 for violating the Toxic Substances Control Act "Section 8(e)—the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."[11]

243.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from the Washington Works plant had reviewed the available scientific evidence and notified DuPont of a "probable link"[12] between PFOA exposure and the

---

[10] EPA, Consent Agreement and Final Order, *In re E.I. DuPont de Nemours & Co.*, TSCA Docket TSCA-HQ-2004-0016 (Dec. 14, 2005), available at https://www.epa.gov/sites/default/files/documents/dupontpfoasettlement121405.pdf (last accessed March 11, 2025).

[11] *Id.*

[12] Under the settlement, "probable link," means that given the available scientific evidence, it is more likely than not that among class members a connection exists between PFOA/C8 exposure and a particular human disease. *See* C8 Panel, *C8 Probable Link Reports*, available at http://www.c8sciencepanel.org/prob_link.html (last accessed March 11, 2025).

serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia.[13]  By October 2012, the C8 Science Panel had notified DuPont of a probable link between PFOA and five other conditions—high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

244.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

245.    Defendants also knew or should have known that: (a) users of AFFF would likely include fire and rescue training organizations and their personnel; (b) fire and rescue personnel were foreseeable users of AFFF containing or degrading into PFOA and/or PFOS in both training and real-life fire emergency scenarios; (c) PFOA and PFOS are dangerous to human health when used by fire and rescue personnel; (d) fire and rescue personnel foreseeably lacked knowledge of these dangers; and, (e) fire and rescue personnel would require warnings of these dangers and/or affirmative instructions in the use of AFFF.

246.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, purchased, supplied, and/or sold PFOA/PFOS; (2) issued instructions on how AFFF should be used and disposed of; (3) failed to recall and/or warn the users of AFFF of the dangers to human health that result from the standard use and disposal of these products; negligently designed products containing or degrading into PFOA and/or PFOS; and (5) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF

---

[13]  *See* C8 Science Panel, Status Report: PFOA (C8) exposure and pregnancy outcome among participants in the C8 Health Project (July 15, 2011), available at http://www.c8sciencepanel.org/pdfs/Status_Report_C8_and_pregnancy_outcome_15July2011.pdf  (last accessed March 11, 2025).

containing PFOA and/or PFOS, notwithstanding the fact that Defendants knew the identity of the purchasers of the PFOA/PFOS.

247.    Further, Defendants failed to disclose to environmental regulators and the general public the likely existence of and health risks to the public caused by widespread PFOA and PFOS contamination in drinking water supplies across the country as a result of AFFF usage.

248.    As a direct result of Defendants' acts alleged in this Complaint, Plaintiffs suffered severe health effects caused by exposure to AFFF containing PFOA and/or PFOS.  As a direct and proximate result, Plaintiffs incurred substantial harm, both economic and non-economic.

249.    Defendants had a duty and breached their duty to evaluate and test such products adequately and thoroughly to determine their potential human health impacts before they sold such products. They also had a duty and breached their duty to minimize the risk of harm to human health caused by PFOA and PFOS.

**D.   <u>The Impact of PFOA and PFOS on the Plaintiffs</u>**

250.    Plaintiffs have been significantly and continuously exposed to PFOA and PFOS over many years as a result of Defendants' conduct.

251.    Plaintiffs have been diagnosed with the serious injuries set forth above, including kidney cancer, testicular cancer, thyroid disease, and ulcerative colitis.

252.    Plaintiffs' injuries were caused by Defendants' Fluorosurfactant Products.

253.    The use of Fluorosurfactant Products as directed and intended by the manufacturers caused Plaintiffs' exposure to PFOA and PFOS, which caused Plaintiffs' injuries.

254.    Therefore, as a direct and proximate result of Defendants' tortious conduct as set forth in this complaint, Plaintiffs were damaged in the following ways:

      a.      Plaintiffs suffered physical pain and mental anguish;

      b.      Plaintiffs incurred hospital, medical, pharmaceutical and other expenses; and

     c.     Plaintiffs experienced undue stress related to their diagnoses, medical conditions, and uncertainty about their prognosis.

## FIRST CAUSE OF ACTION

**STRICT LIABILITY – DESIGN DEFECT AND/OR DEFECTIVE PRODUCT**

255.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

256.    Defendants designed, manufactured, formulated, packaged, distributed, promoted, marketed, and/or sold AFFF and other Fluorosurfactant Products containing PFOA/PFOS contaminants.

257.    Defendants represented, asserted, claimed and warranted that their AFFF and other Fluorosurfactant Products could be used in conformity with accompanying instructions and labels in a manner that would not cause injury or damage.

258.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers and marketers of PFOA/PFOS contaminants, Defendants owed a duty to all persons whom Defendants' products might foreseeably harm, including Plaintiffs, not to market any product which is unreasonably dangerous for its intended and foreseeable uses.

259.    When Defendants placed AFFF products into the stream of commerce, they were defective, unreasonably dangerous, and not reasonably fit, suitable, and safe for their intended, foreseeable and ordinary transportation, storage, handling, and uses for the following reasons:

     a.     When used as intended and directed, PFOA and PFOS escape from AFFF products;

     b.     Users and bystanders are exposed to PFOA and PFOS by inhalation, ingestion, or through skin absorption;

     c.     PFOA and PFOS are likely to infiltrate the water supply when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

     d.     PFOA and/or PFOS persist and bioaccumulate in the human body; and

e.    PFOS and PFOA are associated with serious health risks and medical conditions.

260.    Plaintiffs used and were exposed to Defendants' AFFF and Fluorosurfactant Products in a reasonably foreseeable manner and without substantial change in the condition of such products.

261.    Defendants knew, or should have known, that use of AFFF in its intended manner would result in exposures and personal injuries to users, bystanders, and the general public, including Plaintiffs.

262.    The PFOA/PFOS-containing products used by Plaintiffs were defective in design and unreasonably dangerous because, among other things: PFOA and PFOS are bioacculative and toxic; and human exposure to PFOA and/or PFOS is associated with serious medical conditions including testicular cancer, kidney cancer, ulcerative colitis, and thyroid disease.

263.    Therefore, as a direct and proximate result of Defendants' defective design of AFFF, Plaintiffs were physically harmed and are damaged in the following ways:

a.    Plaintiffs suffered, and continue to suffer, physical pain and mental anguish;

b.    Plaintiffs incurred hospital, medical, pharmaceutical and other expenses;

c.    Plaintiffs have endured painful surgeries and treatments for their injuries;

d.    Plaintiffs will continue to suffer – and incur additional costs – for the foreseeable future as a result of their injuries; and

e.    Plaintiffs suffer undue stress from the fear that their cancer may recur and that they may develop additional health conditions.

## SECOND CAUSE OF ACTION
## STRICT LIABILITY- FAILURE TO WARN

264.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

265.    As manufacturers, distributors, suppliers, sellers and marketers of PFOA/PFOS-containing AFFF, Defendants had a duty to issue warnings of the risks posed by PFOA and/or PFOS

to all persons whom its product might foreseeably harm, including Plaintiffs, the public, and public officials.

266.     At all times, Defendants knew or should have known that PFOA/PFOS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

    a.  Users of AFFF are exposed to PFOA and PFOS when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

    b.  PFOA and PFOS are likely to infiltrate the water supply when AFFF is used, handled, or disposed of in its foreseeable and intended manner;

    c.  PFOA and PFOS exposure may cause diseases like Plaintiffs';

    d.  PFOA and/or PFOS persist and bioaccumulate in the human body; and

    e.  PFOA and/or PFOS pose significant threats to human health.

267.     The foregoing facts relating to the hazards that AFFF poses to human health are not the sort of facts that Plaintiffs and the general public could ordinarily discover or protect themselves against in the absence of sufficient warnings.

268.     Defendants knew of the health risks associated with PFOA/PFOS- containing AFFF and failed to provide a warning that would lead an ordinary reasonable user, handler, or bystander of a product to contemplate the dangers associated with PFOA/PFOS- containing AFFF or an instruction that would have allowed Plaintiffs to avoid injury.

269.     Defendants knew that their AFFF containing PFOA/PFOS contaminants would be purchased transported, stored, handled, and used without notice of the hazards which PFOA/PFOS pose to human health.

270.     Defendants breached their duty to warn by unreasonably failing to provide warnings about potential and/or actual exposure to PFOA and/or PFOS, despite the fact that Defendants knew that these contaminants were in AFFF.

271.    Plaintiffs were exposed to PFOA/PFOS in Defendants' Fluorosurfactant Products including AFFF either directly or through their drinking water.

272.    Defendants' Fluorosurfactant Products to which Plaintiffs were exposed were used in a reasonably foreseeable manner and without substantial change in the condition of the products.

273.    Defendants' Fluorosurfactant Products were defective in design and unreasonably dangerous products for the reasons set forth above.

274.    Despite the known and/or foreseeable human health hazards associated with exposure to PFOA/PFOS, Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate those hazards.

275.    In particular, Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their PFOA/PFOS contaminants or otherwise.

276.    Therefore, as a direct and proximate result of Defendants' failure to warn, Plaintiffs were physically harmed and are damaged in the following ways:

a.    Plaintiffs suffered, and continue to suffer, physical pain and mental anguish;

b.    Plaintiffs incurred hospital, medical, pharmaceutical and other expenses;

c.    Plaintiffs have endured painful surgeries and treatments for their injuries;

d.    Plaintiffs will continue to suffer – and incur additional costs – for the foreseeable future as a result of their injuries; and

e.    Plaintiffs suffer undue stress from the fear that their cancer may recur and that they may develop additional health conditions.

### THIRD CAUSE OF ACTION
## NEGLIGENCE

277.    Plaintiffs reallege and reaffirm all allegations set forth in the preceding paragraphs.

278. As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers and handlers of AFFF containing PFOA and PFOS, Defendants owed a duty to Plaintiffs and all persons whom Defendants' products might foreseeably harm to exercise due care in the handling, control, disposal, sale, testing, labeling, use, warning, and instructing for use of products containing PFOA/PFOS.

279. Despite the fact that Defendants knew that PFOA and PFOS are bioaccumulative, toxic, and can cause testicular cancer, kidney cancer, ulcerative colitis, thyroid disease, and other serious human health effects, Defendants negligently:

  a.   designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFOA/PFOS-containing products;

  b.   issued instructions on how AFFF products should be used and disposed of, thus improperly permitting human exposure to PFOA and/or PFOS;

  c.   failed to recall and/or warn the users of AFFF products of the dangers of human exposure associated with intended use and disposal of this product; and

  d.   failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFOA and/or PFOS regarding the proper use, handling, and disposal of products containing this toxic chemical, notwithstanding the fact that Defendants know the identity of the purchasers of the AFFF products.

280. As a direct and proximate result of Defendants' negligence, Plaintiffs have been significantly harmed as set forth in detail above.

281. Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious disregard for the health and safety of others, including Plaintiffs.

## FOURTH CAUSE OF ACTION

### FRAUDULENT TRANSFER

### (Against DuPont and Chemours only)

282.    Plaintiffs reallege and reaffirm each and every allegation set forth in all proceeding paragraphs as if fully restated in this cause of action.

283.    Plaintiffs seek equitable and other relief pursuant to the Uniform Fraudulent Transfer Act against DuPont.

284.    Prior to and during 2015, Defendant DuPont was in the business of producing, making, fabricating, designing, marketing, and selling chemical feedstocks containing PFOA and/or chemicals that can degrade into PFOA and/or other PFAS as part of their "performance chemicals business."

285.    Upon information and belief, in February 2014, DuPont formed The Chemours Company as a wholly-owned subsidiary and used it to spin off DuPont's "performance chemicals business" products line in July 2015.

286.    In addition to the transfer of the "performance chemicals business" products line, Chemours accepted broad assumption of liabilities for DuPont's historical use, manufacture, and discharge of PFOA and other PFAS.

287.    Upon information and belief, at the time of the transfer of its Performance Chemicals business to Chemours, DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries from the manufacture, design, marketing and sale of PFOA or other PFAS components for the use in AFFF products.

288.    As a result of the transfer of assets and liabilities to Chemours described in this Complaint, DuPont limited the availability of assets to cover judgements for all liability for damages

and injuries from the manufacture, design, marketing, sale of PFOA or other PFAS components for the use in AFFF products.

289.   DuPont has (a) acted with intent to hinder, delay and defraud creditors, or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (i) was engaged or was about to engage in a business for which the remaining assets of Chemours were unreasonably insufficient in relation to the business; or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

290.   Upon information and belief, DuPont engaged in acts in furtherance of a scheme to transfer its assets out of the reach of creditors, such as Plaintiffs, that have been damaged as a result of DuPont's actions as described in this Complaint.

291.   Upon information and belief, DuPont and Chemours acted without receiving a reasonably equivalent value in exchange for the transfer of obligations, and DuPont believed, or reasonably should have believed, that it would incur debts beyond Chemours' ability to pay as they became due.

292.   Plaintiffs seek to avoid the transfer of DuPont's liabilities for the claims brought in this Complaint and to hold DuPont jointly and severally liable for any damages or other remedies that may be awarded by this Court or a jury under this Complaint.

## TOLLING OF THE STATUTE OF LIMITATIONS

293.   Plaintiffs hereby incorporate by reference the allegations contained within the preceding paragraphs of this Complaint as if restated in full herein.

### Discovery Rule Tolling

294.   Plaintiffs did not know, nor could they have reasonably discovered by the exercise of reasonable diligence, that exposure to fluorochemical products, including AFFF, PFOA, and PFOS

was harmful to human health. The risks of said chemicals and AFFF were not obvious to the users of AFFF, nor were they obvious to individuals such as Plaintiffs in the vicinity of AFFF use. Since Plaintiffs could not have reasonably discovered the defects and risks associated with the use of fluorochemical products, they could not protect themselves from exposure to Defendants' fluorochemical products. For this reason, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiffs' claims.

295.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF, PFOA, PFOS, and other fluorochemical products is harmful to human health within the time period allowed by any applicable statute of limitations.

296.    Plaintiffs had no way of knowing about the risk of serious injury associated with the use of, and exposure to, AFFF and fluorochemical products until very recently. Further, Plaintiffs could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to human health within the time period allowed by any applicable statute of limitations.

297.    During the relevant times, Plaintiffs did not possess specialized scientific or medical knowledge. Plaintiffs did not, and could not, have discovered or known facts that could cause a reasonable person to suspect the risk associated with the use of Defendants' fluorochemical products. Further, a reasonable and diligent investigation by Plaintiffs earlier would not have disclosed that AFFF could cause personal injury.

298.    Wherefore, all applicable statutes of limitations pertaining to Plaintiffs' claims have been tolled by operation of the discovery rule.

**Fraudulent Concealment**

299.    Rather than disclose critical safety and health information regarding its AFFF and fluorochemical products, Defendants have consistently and falsely represented the safety of AFFF products.

300.    This fraudulent concealment continues to the present day.

301.    Wherefore, due to Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein through the relevant time for this action, all applicable statutes of limitations have also been tolled.

### Estoppel

302.    Defendants were under a continuous duty to consumers, end users, and other persons, such as Plaintiffs, coming into contact with their fluorochemical products, to provide truthful and reliable safety information concerning their products and the risks associated with their use, as well as exposure to AFFF.

303.    Rather than fulfill this duty, Defendants knowingly, affirmatively, and actively concealed important safety information and warnings concerning AFFF and the health risks associated with the same.

304.    Wherefore, Defendants are estopped from relying on any statute of limitations in defense of this action.

### PRAYER FOR RELIEF

Plaintiffs respectfully pray for judgment against Defendants, jointly and severally, as follows:

a.   Compensatory damages and all other special damages according to proof including, but not limited to past and future medical and treatment costs; non-economic damages; loss of earnings and future earnings; and household expenses, among others.

b.   Avoiding the transfer of DuPont's liabilities for claims brought in this Complaint;

c.   Exemplary and Punitive damages;

    d.   Attorneys' fees;

    e.   Pre-judgment and post-judgment interest; and

    f.   Any other and further relief as the Court deems just, proper, and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by a jury on all of the triable issues of this Complaint.

Dated:    June 5, 2025

Respectfully submitted,

*/s/ Holly Werkema*_____
**BARON & BUDD, P.C.**
Holly Werkema (FL Bar No. 71133)
hwerkema@baronbudd.com
3102 Oak Lawn Dr., Ste. 1100
Dallas, Texas 75219
Telephone: (214) 521-3605
Fax: (214) 523-6600

**COSSICH, SUMICH, PARSIOLA**
**& TAYLOR, LLC**
Philip F. Cossich, Jr. (LA Bar No. 1788)
*(Pro Hac Vice Forthcoming)*
pcossich@cossichlaw.com
Christina M. Cossich (LA Bar No. 32407)
*(Pro Hac Vice Forthcoming)*
ccossich@cossichlaw.com
8397 Highway 23, Suite 100
Belle Chasse, LA 70037
Telephone: (504) 394-9000

*Attorneys for Plaintiff*